```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X          For Online Publication Only
HERBER GUZMAN,


                             Plaintiff,
                                                                           **MEMORANDUM & ORDER**
              -against-                                                    13-CV-6829 (JMA) (AYS)

SHERIFF SPOSATO, CO OFFICER HAHN,
Badge #2493, CO FRED GRAY, Badge #2490,
and CO JOSE ROMAN, Badge #2003,

                             Defendants.
----------------------------------------------------------------X
```

**APPEARANCES:**

   Herber Guzman
      *Pro se Plaintiff*

   Samantha Goetz
   Office of the Nassau County Attorney
   One West Street
   Mineola, NY 11501
      *Attorney for Defendant*

**AZRACK, United States District Judge:**

      Incarcerated pro se plaintiff Herber Guzman filed the instant action under 42 U.S.C. § 1983 alleging that Corrections Officers Jose Roman and Dennis Hahn verbally abused him and subjected him to excessive force on September 17, 2013 and September 18, 2013.

      Defendants have moved for summary judgment on plaintiff's claims, asserting that plaintiff failed to exhaust his administrative remedies before filing this lawsuit and that plaintiff's claims also fail on the merits. For the reasons stated below, defendants' motion is denied on the issue of exhaustion and on plaintiff's claim that he was subjected to excessive force based on allegedly tight handcuffing and multiple punches to plaintiff's ribs. Defendants' motion is granted on plaintiff's claims concerning denial of toilet paper and verbal abuse.

1

# I. BACKGROUND

The facts set forth below are taken from plaintiff's verified complaint, the written supplement attached to the complaint, plaintiff's sworn narrative statement, and the documentary evidence that both parties have submitted in their summary judgment briefing. Defendants have not submitted: (1) any deposition testimony from plaintiff; or (2) any deposition testimony or declarations from the defendant officers.

Because defendants have moved for summary judgment, the Court must construe the facts in the light most favorable to plaintiff and must resolve all ambiguities and draw all reasonable inferences against defendants. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

In September 2013, plaintiff was incarcerated at the Nassau County Correctional Center ("NCCC"). He appears to have been a pretrial detainee. Plaintiff is blind in one eye. (Compl. at 4, ECF No. 1.)

On September 17, 2013, plaintiff was in the holding pens at the Mineola Courthouse when he told corrections officers that he needed toilet paper to use the bathroom because he "had to poop." (Handwritten Addendum to the Complaint ("Addendum") at 1, ECF No. 1.) The officers refused to give him toilet paper. (Id.) Around 10 a.m., plaintiff again asked for toilet paper to use the bathroom. Then, Officer Roman "handcuffed [him] very tight and verbally assaulted [him saying] 'Shut up you piece of shit mother fucker' in Spanish." (Id. at 1; Pl.'s Narrative Statement ("Narrative") at 2, ECF No. 26.) The handcuffs were on him for an hour and allegedly caused severe bruises to plaintiff's wrists. (Narrative at 2.) At one point, plaintiff told Roman, "it's too hard," presumably referring to the tight handcuffs. (Internal Affairs Dep.

("IA Dep.") at 1, ECF No. 68.) After plaintiff was brought up to court, he was placed in different holding cells for the rest of the day and "everything was OK." (Addendum at 1.)

The next day, September 18, 2013, plaintiff returned to the courthouse around 10 a.m. and saw Officer Roman and Officer Hann. (Addendum at 1; Narrative at 3.) Officer Hahn then handcuffed plaintiff "very tight." (Addendum at 1.) After plaintiff said to Officer Hahn,"[you are] hurting me," Officer Hahn responded, "Shut up Cyclops, I am going to take your other eye out, you Mexican spic, I am really going to hurt you, I am going to send you to the hospital." (Id.) Officer Hahn then punched plaintiff in his ribs, pushed him into another room, and continued to punch him. (Id.) All told, Officer Hahn punched him several times. (Id.) Plaintiff claims that he ended up with marks from the excessively tight handcuffs. (Id.)

After complaining to prison staff, plaintiff was examined that same day by a doctor, who ordered x-rays of plaintiff's ribs and prescribed Motrin for plaintiff. (Id.; Defs.' Ex. D, ECF No. 67.) The medical record from this visit indicates "mild erythema" for plaintiff's right wrist.[1] (Defs.' Ex. D.) The record also indicates that plaintiff reported pain in his right ribs and that his ribs were "tender to touch," but there was no "crepitus."[2] (Id.) Plaintiff maintains that the next day—September 19, 2013—a "big bruise . . . formed on the right side of [his] ribs where [he] had been punched." (Addendum at 2.)

On September 19, 2013, plaintiff filed a complaint with Internal Affairs about the incidents. (IA Dep.) On September 27, 2013, plaintiff filed a grievance that discusses both the

---

[1] Erythema "is redness of the skin or mucous membranes, caused by hyperemia (increased blood flow) in superficial capillaries. It occurs with any skin injury, infection, or inflammation." (Wikipedia, https://en.wikipedia.org/wiki/Erythema (last visited on Mar. 31, 2018).)

[2] A "crepitus" is a "clinical sign in medicine that is characterized by a peculiar crackling, crinkly, or grating feeling or sound under the skin, around the lungs, or in the joints." (Medicinenet, https://www.medicinenet.com/script/main/art.asp?articlekey=12061 (last visited on March 31, 2018).)

3

underlying incidents as well as a perceived threat of retaliation that allegedly resulted from the plaintiff's Internal Affairs complaint. (Grievance, ECF No. 68.)

Prison officials took pictures of plaintiff's wrists and ribs on September 18 and September 19.[3] (Addendum at 1; <u>see</u> also Inmate Injury Report, ECF No. 68.)

On September 20, 2013, plaintiff's ribs were x-rayed. The radiology report for that x-ray found no evidence of acute injury to plaintiff's right ribs. (Defs.' Ex. E, ECF No. 67.) Another x-ray was taken on October 16, 2013, which also found no evidence of a fracture. (Defs.' Ex. F, ECF No. 67.)

During the Internal Affairs investigation, one inmate reported that plaintiff was punched three times by a corrections officer. (Arroyo IA Dep., ECF No. 67.)

Plaintiff's § 1983 complaint, which is dated November 7, 2013, alleges that, as of that date, he still had numbness in one of his wrists from the handcuffs. (Addendum at 2.) In plaintiff's narrative statement, which he submitted to the Court on February 4, 2015, plaintiff alleges wrist numbness as one of his injuries. (Narrative at 6.) The narrative statement, however, does not indicate whether plaintiff was still suffering from wrist numbness as of that date.

## II. DISCUSSION

**A. <u>Exhaustion</u>**

**1. Standard**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, requires inmates to exhaust administrative remedies that are "available" to the inmate. <u>Hubbs v. Suffolk Cty. Sheriff's Dep't</u>, 788 F.3d 54, 59 (2d Cir. 2015). "To be 'available' under the PLRA, a remedy

---

[3] Neither party has introduced any of these photographs into the record nor have they explained the absence of these photographs.

must afford the possibility of some relief for the action complained of." Id. (citations and internal quotation marks omitted).

> Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient source[s] such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute. If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact.

Id. at 59 (citations and internal quotation marks omitted).

**2. Analysis**

On plaintiff's form § 1983 complaint, plaintiff checked boxes indicating that, although the NCCC has a grievance procedure, he did not present the facts at issue through that grievance procedure. (Compl. at 2). Plaintiff's complaint goes on to note that he did notify internal affairs and that its investigation was ongoing. (Id.)

Based on these statements in plaintiff's complaint, defendants have moved for summary judgment, arguing that plaintiff failed to exhaust his administrative remedies because "despite knowing the procedure and having the procedure available, [plaintiff] failed to file any grievance related to the incident on September 17, 2013, and failed to file any grievance related to the incident on September 18, 2013." (Defs.' Mem. at 4, ECF No. 64.) However, in opposition to summary judgment, plaintiff submitted a grievance dated September 27, 2013 that references the events at issue. Defendants do not address this grievance, in any fashion. Accordingly, the Court denies defendants' motion for summary judgment as to exhaustion.

The Court notes that, even if the September 27 grievance were insufficient to satisfy

exhaustion,[4] it is not clear from the sparse record before the Court that administrative remedies were available to plaintiff for the incidents on September 17 and 18. If such remedies were not available, then plaintiff would not have been required to file a grievance concerning those incidents.

First, these incidents did not take place at the NCCC. Rather, these incidents occurred while plaintiff was in holding pens at a courthouse in Mineola. Defendants have not shown that administrative remedies were available to plaintiff for incidents that occurred at the courthouse.

In Hubbs, the Second Circuit found that a plaintiff who was allegedly assaulted in a holding cell at Suffolk County Supreme Court was not required to file a grievance with the Suffolk County Correctional Facility. 788 F.3d 54. The Second Circuit concluded that, based on the record before it, which included the inmate handbook and the affidavit from the facility's grievance coordinator, the defendant did not establish that administrative remedies were available to the plaintiff for an incident that occurred at the courthouse. Id.

Here, the record is even barer. The only relevant authority cited by defendants are the New York state regulations that direct local correctional facilities to establish inmate grievance programs and set forth certain requirements for such programs. See 9 N.Y. COMP. CODES R. & REGS. tit. 9, § 7032.1 to .12. These regulations provide, among other things, that "[i]nmate grievances are required to be filed in writing to the Grievance Coordinator within five days of the aggrieved occurrence." Id. at § 7032.4(d).

---

[4] Plaintiff's September 27 grievance discusses plaintiff's fear of retaliation for plaintiff's September 19 complaint to Internal Affairs. The September 27 grievance, however, also provides facts about the underlying incidents. Defendants have not provided the Court with any authority indicating that plaintiff's grievance should be construed to concern only the alleged retaliation and not the underlying incidents. Additionally, although plaintiff filed the September 27 grievance nine days after the September 18 incident, defendants have not argued that the September 27 grievance was untimely. Notably, the grievance coordinator did not deny the grievance as untimely.

Defendants, however, have not provided any relevant Nassau County regulations, an inmate handbook, or an affidavit from an official at the jail to indicate that administrative remedies were available to plaintiff for incidents that occurred at the courthouse. Moreover, the state regulations cited by defendants define a grievance as "a written inmate complaint concerning either written or unwritten facility policies, procedures, rules, practices, programs or the action or inaction of <u>any person within the facility</u>." N.Y. COMP. CODES R. & REGS. tit. 9, § 7032.2(a) (emphasis added). This definition of "grievance" suggests that grievances do not cover the actions of persons outside of the facility. The Court also notes that plaintiff attests that he was informed, by one or more unidentified individuals, that court officers are not facility staff, (Narrative at 6). Cf. Williams v. Suffolk Cty., No. 11-CV-5198, 2012 WL 6727160, at *4–5 (E.D.N.Y. Dec. 28, 2012) (denying motion for judgment on the pleadings where plaintiff argued that "the administrative grievance procedures were not 'available' to him because prison officials misrepresented that the grievance process could not assist him and that he needed to initiate an internal affairs investigation"). Given the above, defendants have not shown that they are entitled to summary judgment on the question of whether administrative remedies are available to an inmate concerning incidents that occur at a courthouse.

Second, even if Nassau County prisoners are generally required to file grievances concerning incidents that occur at courthouses, summary judgment would still be denied because of plaintiff's Internal Affairs complaint.

It is not clear that any administrative remedies were available to plaintiff after he filed the Internal Affairs complaint on September 19. The internal affairs complaint was still pending on September 23 (five days after the September 18 incident) and on September 27 when plaintiff filed his grievance. Generally, the filing of a complaint with an internal affairs department does

7

not excuse an inmate from also filing a grievance. See Williams, 2012 WL 6727160, at *4–5 ("[A]n inmate's request for an internal affairs investigation is not a substitute for complying with the prison grievance procedures."). However, the Supreme Court's recent decision in Ross v. Blake, 136 S. Ct. 1850 (2016), suggests that if the officials to whom the grievances are directed do not have the authority to provide any remedy to an inmate when an internal affairs investigation is ongoing, then no administrative remedies are available and exhaustion is not required. Ross, 136 S. Ct. at 1858–62; see also Kearney v. Gebo, --- Fed. App'x ----, 2017 WL 5256820, at *2 (2d Cir. Nov. 13, 2017) ("[T]here may be circumstances, such as those presented in Ross, . . . in which an inmate is foreclosed from submitting a grievance by virtue of a concurrent administrative investigation.").

Here, the Grievance Coordinator accepted plaintiff's September 27 grievance, but stated: "The grievant's complaint was forwarded to the facility's Internal Affairs Unit (IAU). Grievance does not have the legal authority to review and respond." (Grievance Form, ECF No. 68.) Thus, it appears from the face of plaintiff's grievance that the Grievance Coordinator was powerless to provide plaintiff with any remedy related to the incidents once plaintiff filed a grievance on September 19. Additionally, defendants have not provided any relevant Nassau County regulations, an inmate handbook, or an affidavit from an official at the jail to indicate that administrative remedies are available to an inmate who already has a pending Internal Affairs complaint. As such, defendants have not shown that they are entitled to summary judgment on the question of whether plaintiff's Internal Affairs complaint rendered administrative remedies unavailable.

For all of the reasons stated above, defendants' motion for summary judgment on their exhaustion defense is denied.

The Court notes that plaintiff, who is proceeding pro se, did not: (1) raise any of the points addressed above in opposition to summary judgment; or (2) cross-move for summary judgment on defendants' exhaustion defense. Because plaintiff did not move for summary judgment and the Court, not the jury, is tasked with ultimately deciding defendants' exhaustion defense, see Messa v. Goord, 652 F.3d 305, 307 (2d Cir. 2011), defendants will have one final opportunity to address this issue prior to trial if defendants can establish that a hearing is warranted on the issue of exhaustion.

**B. Merits**

**1. Toilet Paper Claim**

Defendants have construed plaintiff's complaint to raise a claim based on the officer's refusal to give plaintiff toilet paper on September 17. The Court does not believe plaintiff is actually attempting to pursue such a claim. In any event, even assuming, for the sake of argument, that such a claim is at issue, the Court grants defendants summary judgment on that claim. The brief denial of toilet paper at issue here does not violate the Eighth Amendment.

**2. Verbal Abuse**

Defendants correctly argue that verbal abuse, standing alone, is not actionable under the Constitution and Section 1983. See Rebenstorf v. City of New York, No. 15-CV-5784, 2015 WL 6438765 (E.D.N.Y. Oct. 21, 2015) ("The law is clear that although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation under § 1983." (quoting Jermosen v. Coughlin, 878 F. Supp. 444, 449 (N.D.N.Y. 1995))). Accordingly, any claims based solely on verbal abuse are dismissed.

### 3. Excessive Force – Tight Handcuffing and Punches

Defendants argue that plaintiff's excessive force claims concerning the tight handcuffing and punching must be dismissed because plaintiff's allegations of injuries are *de minimis* and contradicted by the medical evidence. The Court disagrees and finds that factual issues preclude summary judgment on plaintiff's excessive force claims concerning both the tight handcuffs and the multiple punches. Cf. Castro v. Cty. of Nassau, 739 F. Supp. 2d 153, 177 (E.D.N.Y. 2010) (denying summary judgment where handcuffs "left imprints on [plaintiff's] wrists and caused his wrists to become 'red and sore'" and "the record [was] unclear as to the intensity and duration of plaintiff's soreness or discomfort"). With respect to the punches allegedly thrown by Officer Hahn, plaintiff's claim that he suffered injuries (including the bruise that allegedly developed on September 19) is not so clearly foreclosed by the September 18 medical report and the subsequent x-rays that summary judgment is appropriate here. The Court also notes that defendants have not cited any authority indicating that multiple gratuitous punches to an inmate are insufficient to allege an excessive force claim.

Although defendants have also moved for summary judgment based on qualified immunity, defendants' qualified immunity argument only specifically addresses the toilet paper and verbal abuse claims. Defendants have not offered any specific argument as to why they are entitled to qualified immunity as to the excessive force claims.

Accordingly, the Court denies summary judgment on the excessive force claims.

## III. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is denied on the issue of exhaustion and on plaintiff's claim that he was subjected to excessive force based on the alleged tight handcuffing and punches.  Defendants' motion is granted on plaintiff's claims concerning the denial of toilet paper and verbal abuse.

The Clerk of Court is directed to mail a copy of this order to plaintiff.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

Dated:  March 31, 2018
Central Islip, New York

                                            /s/     (JMA)
                                      JOAN M. AZRACK
                                      UNITED STATES DISTRICT JUDGE